**AFFIDAVIT OF SPECIAL AGENT CHRISTINA ROSEN IN SUPPORT OF
APPLICATIONS FOR CRIMINAL COMPLAINT AND SEARCH WARRANT**

I, Christina Rosen, having been duly sworn, do hereby depose and state as follows:

**Agent Background**

1.       I am employed as a Special Agent with the United States Department of Labor,

Office of Inspector General, Office of Investigations in Boston, Massachusetts. I have been

employed by the United States government as a Special Agent since October 2007. I am a

graduate of the Criminal Investigator Training Program of the Federal Law Enforcement

Training Center in Glynco, Georgia, and have received extensive training in criminal

investigation procedures and criminal law. In 2005, I graduated from Northeastern University

with a Bachelor's degree in Criminal Justice. In 2006, I graduated from Boston University with a

Master's degree in Criminal Justice. My responsibilities as a Special Agent with DOL-OIG-OI

include investigating fraud, waste and abuse of Department of Labor programs, employees, and

departments. During my tenure as a Special Agent, I have conducted investigations of several

types of criminal activity including work visa fraud, unemployment insurance fraud, false claims

fraud, employee benefits fraud, identity theft and money laundering. During the investigation of

these cases, I have participated in the execution of search and arrest warrants and have seized

evidence as evidence, fruit, or instrumentalities of violations of federal law.

2.       I am also a member of HSI's Document and Benefit Fraud Task Force

("DBFTF"), a specialized field investigative group comprised of personnel from various state,

local, and federal agencies with expertise in detecting, deterring, and disrupting organizations

and individuals involved in various types of document, identity and benefit fraud schemes.

DBFTF is currently investigating suspected aliens who are believed to have obtained stolen

identities of United States citizens living in Puerto Rico and used those identities to obtain public

benefits, which they would not otherwise be eligible to receive, including Massachusetts Registry of Motor Vehicles ("RMV") identity documents, Social Security numbers ("SSNs"), MassHealth benefits, public housing benefits, and unemployment benefits.  Agents have conducted an analysis of individuals who have received certain public benefits in Puerto Rico and Massachusetts on or about the same dates in an effort to identify individuals in Massachusetts who have been unlawfully and fraudulently using the identities of United States citizens.

### Purpose of Affidavit

3.      I submit this affidavit in support of an application for a criminal complaint charging Fernando MATEO VALENZUELA with: (1) Misuse of a Social Security Number ("SSN"), in violation of 42 U.S.C. § 408(a)(7)(B); (2) Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A; and (3) Mail Fraud, in violation of 18 U.S.C. §1341.

4.      I also submit this affidavit in support of an application for a search warrant for the following property: 926 Hyde Park Avenue, Apartment 1, Hyde Park, Massachusetts, as described in Attachment A.  I have probable cause to believe that this property contains evidence, fruits, and instrumentalities of the crimes identified above, as described in Attachment B.

5.      As set forth in more detail below, there is probable cause to believe that MATEO VALENZUELA unlawfully used the name and SSN of a real person while knowing that these identifiers belonged to a real person.  Among the evidence that MATEO VALENZUELA knew that this identity was that of a real person is his successful use of the identity to obtain government identification documents, unemployment insurance (UI) benefits and earn wages.

6.      This affidavit is based on my personal knowledge, information provided to me by

2

other law enforcement officers and federal agents, and my review of records described herein. This affidavit is not intended to set forth all of the information that I have learned during this investigation but includes only the information necessary to establish probable cause for the requested complaint and search warrant.

### Probable Cause

#### Use of Imposter Identity

7.     On February 4, 2008, an individual submitted an application for a Massachusetts state identification card at the Registry of Motor Vehicles ("RMV") office in Watertown, Massachusetts.  The applicant represented on the application that he was a person whose initials were C.R.O.[1]  He further represented that his date of birth was xx/xx/1960, and that his SSN was xxx-xx-4790.  The RMV took a photograph of the applicant on February 4, 2008, as part of the Massachusetts state identification card application.  The application materials include a Puerto Rican birth certificate in the name of C.R.O.S. (which are the victim's full initials), a Social Security card in the name of C.R.O.S., a Verizon account statement in the name of C.R.O., and a residential lease agreement in the name of C.R.O.  The individual purporting to be C.R.O. signed the application under penalty of perjury.  As a result of that application, the RMV issued the person purporting to be C.R.O. a Massachusetts state identification card with no. Sxxxx7880.

#### Use of True Identity

8.     On April 30, 1996, MATEO VALENZUELA was photographed at the Haymarket RMV office in Boston, Massachusetts as part of a transaction associated with RMV

---

[1] I am protecting the identity of the victim by using initials only.  The identity of the victim, C.R.O.S. is known to the government.  These initials represent the victim's first and last names.  To protect the victim's privacy, only the initials "C.R.O.S.", "C.O.", "C.O.S.", "C.R.O.," "C.R.S.", "C.R.", "C.S." are used in this affidavit to reflect variations of the victim's full name that have been used.

license/identification no. Sxxxx9292.  This transaction was done in his true name. On July 6,

2004, MATEO VALENZUELA, DOB xx/xx/1953, was photographed at the RMV office in

Brockton, Massachusetts as part of a transaction associated with Massachusetts Class D driver

license no. Sxxxx9292 issued on September 7, 2004.

**CARES Act Unemployment Insurance Benefits**

9.      In the Commonwealth of Massachusetts, Unemployment Insurance ("UI")

benefits are funded by the UI Trust Fund, which is comprised of monies obtained by state-

imposed taxes on employers, and federal funds. The Department of Unemployment Assistance

("DUA") is responsible for administering the UI program in Massachusetts.

10.      For a claimant to be eligible to receive UI benefit payments from the UI Trust

Fund, a claimant's SSN needs to be reported by an employer to DUA in quarterly employment

and wage detail reports.

11.      To apply for UI, the claimant must first create an online account and provide

their SSN, date of birth, mailing address, phone number and email address and the former

employer's name, address, reason for unemployed status and start and end dates of employment.

At the "Identity Verification" section, the claimant certifies, upon submission application, "under

penalty of perjury, all information provided is as complete and accurate to the best of my

ability."

12.      Prior to the COVID-19 pandemic, DUA required a one-week waiting period on

all UI claims so that DUA could confirm with the employer and claimant of the UI eligibility.

However, if a UI claim fell under COVID-19 eligibility designation based on the reason listed

for unemployment, this wait week was waived. Once the UI system confirmed the claimant's

SSN has reported earnings by an employer, benefits were delivered to a claimant either via direct

4

deposit or to a Bank of America DUA Pre-Paid debit card. The maximum UI weekly benefit allowance cannot exceed $974.[2]

13.     On March 27, 2020, the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") was signed into law. The CARES Act created a new temporary federal program unemployment insurance program called Pandemic Unemployment Assistance ("PUA").  PUA provided unemployment benefits for individuals who were not eligible for UI or other types of unemployment (e.g., individuals who are self-employed, independent contractors, gig economy workers). All COVID-19 UI claims, and PUA claims, were eligible to receive additional monies and additional benefit weeks from temporary federal programs created by the CARES Act.

    a.  Federal Pandemic Unemployment Compensation ("FPUC") provided an additional $600 per week on all claims from March 29, 2020 to July 25, 2020.

    b.  Pandemic Emergency Unemployment Compensation ("PEUC") provided up to 13 weeks of additional benefits to individuals who exhausted regular UI. PEUC was active from on or about March 29, 2020 to on or about December 26, 2020. PEUC was renewed under CAA and ARPA (defined below) extending the program. On October 4, 2020, the maximum benefit amount for UI was changed from $823 to $855. On October 3, 2021, the maximum benefit was increased to $974. FPUC monies would be paid retroactively, when applicable, on all approved claims, providing additional UI from December 27, 2020 to September 4, 2021.

---

[2] On October 4, 2020, the maximum benefit amount for UI changed from $823 to $855. On October 3, 2021, the maximum benefit increased to $974.

c.  On May 3, 2020, Extended Benefits ("EB") provided up to 13 weeks of benefits to individuals who exhausted regular UI under state or federal law, had no rights to regular UI under any other state or federal law, exhausted PEUC, and the regular UI benefit year ended on or after May 9, 2020.  EB ended on July 17, 2021.

d.  Federal Lost Wages Assistance ("LWA") provided an additional $300 per week, on all claims collecting at least $100 per week, funded by the Federal Emergency Management Agency ("FEMA") from August 1, 2020 to September 5, 2020.

e.  On or about December 27, 2020, the Continued Assistance Act or Unemployed Workers ("CAA") was signed into law extending benefits under the CARES Act to March 14, 2021. The CAA also provided an additional $300 per week in FPUC for all CARES Act unemployment claims. DUA implemented these additional monies for UI claims on January 6, 2021 and for PUA claims on January 11, 2021.

f.  Beginning on or about February 19, 2021, Mixed Earners Unemployment Compensation ("MEUC") provided an additional $100 per week supplement to certain eligible individuals who received self-employment income during 2021.

g.  On or about March 11, 2021, the American Rescue Plan Act of 2021 ("ARPA"), extended all unemployment benefits under the CARES Act through September 4, 2021, and provided new qualification requirements.

h.  Federal UI benefits, including FPUC, PUA, PEUC, and MEUC, ended

6

September 4, 2021. No weeks were payable after September 4, 2021 even
if a claimant had a balance or remaining weeks on a claim.

14.     UI claims submitted online to DUA are processed via Amazon Web Services
(AWS) -a cloud-based server- that engages in interstate wires. UI claims are frequently
submitted via the internet, and I understand that individuals who submit unemployment related
information to DUA via the internet cause wire communications to be transmitted to and/or from
these servers. In addition, DUA correspondence to unemployment claimants is often conducted
via the United States Postal system.  In some instances, a claimant will provide documentation to
DUA, via the United States Postal system, in support of their UI claim.  This documentation is
scanned by DUA and attached to the claimants UI claim.

15.     CARES Act program monies are received by DUA into a People's United Bank
Account from the U.S. Treasury. The monies paid to the claimants for these programs are
transmitted via wire communications from Connecticut to the claimant's designated bank
account or the bank account for a Bank of America pre-paid debit card.

### C.O. UI Claim

16.     On or about April 7, 2020, a UI claim (1779383) was filed in the identity of C.O.
using SSN xxx-xx-4790, DOB xx/xx/1960, email crubensaez1953@gmail.com, phone number
(xxx) xxx-0582, and an address of 1004 Hyde Park Ave, Hyde Park, Massachusetts.[3]  During
this initial application, C.O. reported his employment was first affected by COVID-19 on April
5, 2020 and he was cook at a restaurant in Boston, Massachusetts.  C.O. further identified he was
a US Citizen and listed his language preference as Spanish.  C.O. also requested correspondence

---

[3] During the course of the investigation, MATEO VALENZUELA moved from 1004
Hyde Park Avenue to 926 Hyde Park Avenue.

from DUA be delivered via US mail, to not have any state of federal taxes withheld from the
benefit payments, and for the payments to be deposited onto a Bank of America Pre-Paid debit
card.  It was mailed to 1004 Hyde Park, Avenue, Massachusetts.

17.     Based on the information provided by the claimant, the UI claim for C.O. was
approved for a weekly benefit allowance of $502.

18.     According to DUA, from on or about April 21, 2020 to on or about December 22,
2020, a total of $29,051 ($17,651[4] in UI; $9,600 in FPUC; $1,800 in FLWA) was paid on the
C.O. UI claim.

19.     On or about December 22, 2020, DUA sent an Identity Verification letter to C.O.
at 1004 Hyde Park Ave, Hyde Park, Massachusetts.  In the letter, DUA requested documentation
for proof of SSN and a government issued identity document (i.e., birth certificate, driver's
license, passport, etc.).  This letter also stated the claimant must respond by January 6, 2021.
The payments were suspended pending the resolution of this issue.

20.     On or about January 8, 2021, DUA received, via U.S. mail, C.O.'s response to the
Identity Verification letter.  This response included front and back photocopy of a Social
Security card for xxx-xx-4790 in the name of C.R.O.S.; and front and back photocopy of a
Puerto Rican birth certificate (152-1960-00326-000000-216106-02563526) for C.R.O.S. with a
DOB xx/xx/1960.

21.     On or about February 11, 2021, DUA received, via U.S. mail, C.O.'s Appeal
Request.  In this request for an appeal, C.O. identified his reason for the appeal was *I lost my job
because of the pandemic and everything is closed because of the pandemic.  There is no work.  In*

---

[4] The total UI paid on this claim is $18,574, however based on partial earnings a total of
$923 was deducted by DUA.

*March my job opens back up.*  On or about March 9, 2021, DUA received, via U.S. mail, C.O.'s

response to the Identity Verification letter.  *Working 20 hours a week and my job is closed*

*because of the pandemic.  Not because I was fired or because I quit.  Please, I am asking for an*

*extension. On June 17, 202,1 DUA denied his appeal and payments were never resumed.*

### MassHealth

22.     The Medicaid Program is a joint federal-state program that provides health

coverage to certain categories of people, including eligible low-income adults, children, pregnant

women, elderly adults, and people with disabilities.  Medicaid is administered by the states,

according to federal requirements, and is funded jointly by states and the federal government.

MassHealth is the Medicaid Program in Massachusetts.

23.     According to MassHealth records there is a MassHealth account associated with

SSN xxx-xx-4790 in the name of C.O., with a date of birth of xx/xx/1960.  According to

MassHealth records the MassHealth account in the C.O. identity received services between

approximately August 2015 and January 2022.

### Supplemental Nutrition Assistance Program

24.     The U.S. Department of Agriculture (USDA) Supplemental Nutrition Assistance

Program (SNAP) enables low-income households to purchase food. Eligibility for SNAP

benefits is based on income, resources, and the number of individuals in a household. SNAP

provides nutritional assistance in the form of an Electronic Benefit Transfer (EBT) card that must

be used at participating food stores to buy food. The USDA is an agency of the executive branch

of the United States. USDA provides funding for SNAP and shares the cost of administering

SNAP with its state partners. In Massachusetts, SNAP benefits are administered by

Massachusetts Department of Transitional Assistance (DTA) in accordance with federal

requirements. Massachusetts DTA is responsible for determining SNAP eligibility and authorizing benefits for low-income households in need.

25.     In order to qualify for SNAP in Massachusetts, the applicant must be a resident of Massachusetts, meet the eligibility requirements, and be a United States citizen or an eligible non-citizen. An applicant for SNAP benefits must also provide proof of their identity, i.e., the applicant must be the person who they claim to be. An applicant must also furnish a Social Security Number (SSN) or provide proof that the applicant has applied for one.

26.     An applicant for SNAP benefits must provide complete and accurate information both at the time of application and on an ongoing basis in order to properly assess initial and continued eligibility for benefits.

27.     On or about March 14, 2019, an individual purporting to be C.O. submitted an application for assistance to Massachusetts DTA for SNAP benefits. In the application, the individual purporting to be C.O.  provided a date of birth of XX/XX/1960 and SSN XXX-XXX-4790. The individual purporting to be C.O. provided an address of 1004 Hyde Park Avenue, Hyde Park, MA. The individual purporting to be C.O. provided a positive response to the question regarding United States citizenship. Additionally, the individual purporting to be C.O. signed the application under penalty of perjury

28.     The Massachusetts DTA application included a copy of a social security card bearing the name C.R.O.S. and SSN XXX-XX-4790.

29.     Based on USDA records, database searches reveal that $7,230.13 in benefits was used by the SNAP account (with Household Number ending in 4790) belonging to the individual purporting to be C.O. for the time period of March 16, 2019, through February 8, 2022.

## Confirmation of a Valid Social Security Number

30.     The Social Security Administration ("SSA"), Office of Inspector General has confirmed that SSN xxx-xx-4790 is assigned to C.R.O.S.

## Identification of the Imposter

31.     The Dominican Republic has a national identification card which is called a Cedula.  HSI obtained information concerning Cedula Number xxx-xxxxx75-7, in the name of MATEO VALENZUELA, Fernando born on September 29, 1953, in Banica, Dominican Republic, which included the photograph and fingerprints associated with this Cedula.

32.     On September 12, 2018, the Suffolk County Sheriff's Department arrested an individual purporting to be C.O. for the offenses of Enticing a Child Under the Age of Sixteen (16), Indecent Assault and Battery on a Child Under Fourteen (14) and Dissemination of Matter Harmful to Minors.  Following the September 12, 2018 arrest, as part of the booking process, police took fingerprints and a photograph of the individual purporting to be C.O. The fingerprints collected during the booking process on September 12, 2018 were positively matched with FBI Number xxxxx4NA3.

33.     The fingerprint impressions from MATEO VELENZUELA's Cedula Number xxx-xxxxx75-7 and the fingerprint impressions associated with FBI Number xxxxx4NA3 were sent to the HSI Forensic Laboratory for analysis.  The HSI Forensic Laboratory determined that these fingerprint impressions belonged to the same individual.

34.     Agents obtained a copy of the Massachusetts Automated Fingerprint Identification System (AFIS) state rap sheet mugshots for FBI Number xxxxx4NA3 with seven (7) photos included depicting an individual with a listed name of C.O. and date of birth of xx/xx/1960.

35.     Agents obtained records from the U.S. Department of Agriculture, Office of the Inspector General associated with Supplemental Nutrition Assistance Program (SNAP) benefits and the Massachusetts Department of Transitional Assistance (DTA) which included a photograph depicting an individual purporting to be C.O. with a listed date of birth of xx/xx/1960 and SSN xxx-xx-4790.

36.     I have compared the following six (6) photographs: (a) the February 4, 2008 photograph from the RMV database of the applicant purporting to be C.O.; (b) the April 30, 1996 photograph from the RMV database for MATEO, Fernando; (c) the July 6, 2004 photograph from the RMV database for MATEO, Fernando; (d) the September 12, 2018 photograph taken of the purported C.O. after the arrest by the Suffolk County Sheriff's Department; (e) the photograph from MATEO VALENZUELA's Cedula Number xxx-xxxxx75-7; and (f) the photograph contained in the SNAP/DTA records associated with the individual purporting to be C.O. I conclude that the six photographs all depict the same individual.

37.     Information from Puerto Rico's Driver and Vehicle Information Database ("DAVID") assigned to an individual named C.R.O.S. indicates that this person has a date of birth of xx/xx/1960, is assigned SSN xxx-xx-4790 and lives in Naranjito, Puerto Rico.  I have examined a photograph associated with that DAVID record for this person and conclude that the individual depicted in that photograph is not the same as the individual depicted in the six photographs from the preceding paragraph.

## Search for Identification Documents

38.     The September 12, 2018, arrest by the Suffolk County Sheriff's Department subsequently resulted in the individual purporting to be C.O. registering as a sex offender in the Commonwealth of Massachusetts. The individual purporting to be C.O. provided a residential

address of 1004 Hyde Park Avenue, Hyde Park, Massachusetts.

39.     On August 10, 2021, agents conducted surveillance in the area of 1004 Hyde Park Avenue, Hyde Park, Massachusetts.  HSI Special Agent, Peter Coste, met with a Boston Police Department (BPD) detective sergeant and a United States Marshals Service deputy marshal to conduct an address verification and update to the sex offender registry verification form with MATEO VALENZUELA, the individual purporting to be C.O. On August 10, 2021, MATEO VALENZUELA arrived at 1004 Hyde Park Avenue, Hyde Park, Massachusetts and stated he was now residing at 926 Hyde Park Avenue, Apartment 1, Hyde Park, Massachusetts. MATEO VALENZUELA used a key to open the front exterior door and enter the residence located at 926 Hyde Park Avenue. MATEO VALENZUELA granted agents and officers consent to enter his room located at 926 Hyde Park Avenue, Apartment 1, Hyde Park. MATEO VALENZUELA stated he was currently employed by City Winery located at 80 Beverly Street, Boston, Massachusetts.

40.   On November 2, 2021, agents conducted surveillance in the area of 926 Hyde Park Avenue, Hyde Park, Massachusetts and observed MATEO VELENZUELA, the individual purporting to be C.O., standing outside the front exterior entrance of the residence located at 926 Hyde Park Avenue. Agents observed MATEO VALENZUELA exit and re-enter the residence several times. Agents observed MATEO VALENZUELA exit the residence and enter the passenger side of a black sport utility vehicle before he departed the area.  Most recently, on June 13, 2022, agents observed a male leave the residence at 926 Hyde Park Avenue.  The male matched the physical description of MATEO VALENZUELA.  The male walked to a bus stop adjacent to the residence, where one of the agents was able to confirm that the male was MATEO VALENZUELA.

41. I know, based on my training and experience, that:

    a.    Individuals often keep identification documents and other evidence of identity for long periods – sometimes years – and tend to retain such documents even when they depart a given residence. Such documents include social security cards, passports, tax returns, legal documents, utility bills, phone bills, health insurance or prescription cards, medical records, marriage licenses, family records, scrapbooks, photographs, diplomas and other school records, birth certificates, immunization records, bank records, credit card statements, personal correspondence and books or mementos on which they have inscribed their names.

    b.    Individuals often keep identification documents and other evidence of identity in their residence, in part to ensure the security of these documents and in part to allow for access to these documents when needed.

    c.    In addition, it is common for those who use other persons' identities without authorization to maintain fraudulently obtained identification documents in secure locations within their residence to conceal them from law enforcement authorities; and,

    d.    It is common for individuals who use fraudulently obtained identification documents to retain those documents for substantial periods of time so that they can continue to use the fraudulently obtained identities.

42. All agents participating in the search of the premises described in Attachment A will be informed of the full name represented by the initials that appear in Attachment B.

14

**Request for Authority to Execute Search Warrant Prior to 6:00 a.m.**

43.     On June 13, 2022, agents observed VALENZUELA leaving 926 Hyde Park

Avenue at approximately 4:30 a.m.  On April 6, 2022, agents conducting surveillance observed

VALENZUELA leaving the premises at approximately 4:30 a.m.  On both occasions,

VALENZUELA walked to the bus stop adjacent to the residence.

44.     Agents anticipate executing the arrest warrant at approximately 4:30 a.m., the

time at which VALENZUELA has been twice been observed leaving 926 Hyde Park Avenue.  If

the arrest warrant is executed at that time, agents request permission to execute the search

warrant immediately after the arrest in order to prevent the destruction of evidence.

Accordingly, agents believe that there is good cause for the Court to authorize the execution of

the warrant before 6:00 a.m.  Agents will not execute the search warrant prior to 6:00 a.m., if

VALENZUELA is not arrested prior to 6:00 a.m.

**Conclusion**

45.     Based on the foregoing, I have probable cause to believe that, on or about April 7,

2020 and January 8, 2021, Fernando MATEO VALENZUELA (1) falsely represented, with

intent to deceive and for any purpose, a number to be the social security account number

assigned by the Commissioner of Social Security to him, when in fact such number is not the

social security account number assigned by the Commissioner of Social Security to him, all in

violation of 42 U.S.C. § 408(a)(7)(B); and (2) knowingly transferred, possessed and used, during

and in relation to any felony violation enumerated in 18 U.S.C. 1028A(c), and without lawful

authority, a means of identification of another person in violation of 18 U.S.C. § 1028A.  I have

probable cause to believe that, on or about January 8, 2021, February 11, 2021 and March 9,

2021, Fernando MATEO VALENZUELA (3) intended to devise a scheme for obtaining money

by means of fraudulent pretenses or representations by causing to be delivered by mail through a post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service in violation of 18 U.S.C. §1341.

46.   Based on the forgoing, I have probable cause to believe that evidence, fruits, and instrumentalities of these crimes, as described in Attachment B, are located in the premises described in Attachment A.

Sworn to under the pains and penalties of perjury.


_____
CHRISTINA ROSEN
Special Agent
Office of Inspector General-
U.S. Department of Labor


Subscribed and sworn before me telephonically on June 17, 2022


_____
HON. DONALD L. CABELL
United States Magistrate Judge

16

**ATTACHMENT A**

**Premises To Be Searched**

The location to be searched is 926 Hyde Park Avenue, Apartment 1, Hyde Park, Massachusetts, which is a tan colored multifamily residential building with burgundy shutters and the number 926 affixed to the left pillar near the stairs located at the front entrance.  The front door is burgundy colored, located near the middle of the building, and has three mailboxes affixed to the left above the doorbells.  Apartment 1 is located on the first floor of the building.

A photograph of the building is attached.

**Front View of 926 Hyde Park Avenue, Apartment 1, Hyde Park, Massachusetts**



**ATTACHMENT B**

**Evidence to Be Searched for and Seized**

Evidence, fruits, and instrumentalities of violations of 42 U.S.C. § 408(a)(7)(B), 18

U.S.C. § 1028A, and 18 U.S.C. § 1341 including but not limited to:

1. The following records, documents, and items referencing Fernando MATEO

   VALENZUELA or the individual known to agents with the initials "C.R.O.S.",

   "C.O.", "C.O.S.", "C.R.S.", "C.R.", "C.S.", SSN of xxx-xx-4790, and date of birth of

   xx/xx/1960:

   a. Any and all state-issued or apparently state-issued identification documents,

      notes, statements, and/or receipts that reference same;

   b. Any and all immigration documents, including but not limited to United

      States or foreign issued (or apparently issued) passports and identification

      cards;

   c. Any and all documents identifying citizenship, including but not limited to

      birth certificates; voter registration cards; cedulas; and social security cards.

   d. Any and all documents relating to foreign or domestic travel, including

      tickets; schedules; itineraries; or receipts.

2. Any and all records not specified above that evidence the identity of Fernando

   MATEO VALENZUELA, "C.R.O.S.", "C.O.", "C.O.S.", "C.R.S.", "C.R.", and/or

   "C.S.", including but not limited to employment records; bank records; credit card

   records; tax records; marriage records; divorce records; baptismal or confirmation

   records; land/property/residential rental records; school records; health records;

   insurance records; records of utilities, phone service and other services or

subscriptions; records of arrests, court proceedings, or other legal proceedings; records of school, training or counseling; and personal correspondence.

3. Photographs and photograph albums depicting MATEO VALENZUELA.